[Nos. 1771 and 1772.]

### Hal. Lillard v. The State.

1. Continuance — New Trial — Constitutional Law.— It is contended by the appellant in this case that the statute conferring upon the trial judge discretionary power to grant or refuse continuances and new trials is unconstitutional and void, for the reasons, 1, that it deprives the citizen of compulsory process for his witnesses; 2, that it deprives the citizen of the right of trial by jury; and, 3, that the Legislature had no power to regulate continuances and new trials. *Held*, that these positions are not tenable. See this case in illustration, and note the statement of the case for evidence set out in an application for a continuance *held* not to be probably true, and for that reason insufficient to authorize the award of a new trial.

2. Constitutional Law — Excessive Punishment.— Confinement in the penitentiary for the crime of horse theft is neither an excessive, cruel or unusual punishment, nor does it become so by reason of the provision of the Code of Criminal Procedure (article 800) providing for successive imprisonments upon different convictions; wherefore the position that the said article

of the Code of Criminal Procedure is unconstitutional, in that it conflicts with section 13 of the Bill of Rights, is not maintainable.

3. THEFT — EVIDENCE.— See the statement of the case for evidence which, being introduced to establish the identity of the defendant as one of the parties to the theft, and his concurrence in the fraudulent intent of his confederate, and not for the purpose of proving the taking, was properly admitted.

4. SAME— PRACTICE— CHARGE OF THE COURT.— Omission to instruct the jury upon a principle of law properly arising upon the case is not, in the absence of exception or requested special charge, revisable error, unless, upon the whole case, it appears that such omission probably prejudiced the rights of the accused.

APPEALS from the District Court of Bosque. Tried below before the Hon. Jo Abbott.

The first of these convictions (case No. 1771) was for the theft of two horses, the property of Andrew Anderson. The conviction in the second case (No. 1772) was for the theft of one horse, the property of O. W. Cowen. The punishment in each case was confinement in the penitentiary for five years, the sentence in the last case being pronounced to commence at the expiration of the first term. The opinion applies to both cases, but was rendered on the appeal in case No. 1772.

Dr. O. W. Cowen was the first witness for the State. He testified that his horse was stolen from his lot, about fifty feet east from his house, on the night of March 19, 1884. Witness heard his dog barking during the night, but did not get up to see what disturbed him. The horse was taken from the possession of the witness, in Bosque county, without his knowledge or consent. The witness saw the defendant on that morning in camp near Mrs. Windom's house. He also saw three horses in that camp, but did not go nearer them than twenty steps. He did not speak to the defendant on that occasion. He had never seen the defendant before. About a mile and a half from where he saw the defendant in camp, the witness on that morning met a man in the public road. He was about thirty-five or forty years old, and wore a dark brown moustache and chin whiskers. He was a man of rough appearance, dressed in leather leggins, with a red and blue silk handkerchief around his hat. This man was alone, and the witness did not know where he went to. Witness did not see his horse from that day until he was brought back by Terrell, several days afterwards. The camp ground at which the witness saw the defendant was ten miles southwest from Clifton. Witness lived west from Clifton, about seven miles. Anderson's horses were missed about the same time that witness's horse was missed, and were recovered at the same time and in the same manner.

William Hill testified, for the State, that, according to the best of his knowledge and belief, the defendant was the man he saw about three quarters of a mile south of Dr. Cowen's house. He was in company with a man about six feet tall, thirty-five or forty years old, roughly dressed, with leather leggins and a light colored hat. This man had dark skin, and wore a dark brown rough moustache and chin whiskers. Each of these men was riding and leading a horse. They rode very fast. Witness spurred up his horse, and, just before he overtook these parties, the tall man got down from his horse on the right hand side, between his and the defendant's horse, pulled the glove from his right hand, and placed it behind him. Witness saw a pistol protruding from his leggins. This man looked suspiciously at witness, and witness's brother, who was with witness, said: "I saw you at the store yesterday." This was on the day of the night on which the horses were missed. The defendant did not dismount, nor did he say anything. Witness asked the tall man if he was buying cattle. He replied that he had been buying cattle for a Kansas outfit, and that his ranche was in Stephens county, Texas. The defendant and the tall man took the Clifton road, separating from witness at the fork of the Clifton, Gatesville and Meridian roads. Witness did not notice a red handkerchief around the tall man's hat.

J. E. Mickey, for the State, testified that he was a clerk in Smith's store at Brazos Point. About sundown on Thursday, a man and boy, with seven horses, stopped at the store. As the man dismounted to go into the store and purchase some canned goods, the boy, who remained outside on his horse, remarked: "Be d—d quick about it." That boy was the defendant. After purchasing the canned goods, the man went to a grocery across the way and bought a bottle of whisky. The two then left with the horses, going towards Brazos river. Witness recognized the brand of one of Anderson's and one of Cowen's horses, among the lot. Of this he informed Canuteson and Terrell.

Deputy Sheriff Canuteson testified, for the State, that he heard of the theft of the horses on the evening after they were stolen, and started immediately to the residences of Anderson and Cowen, and about four miles from Meridian met Dr. Cowen, William Terrell and another deputy sheriff, and the party thus constituted returned to Meridian. About 10 o'clock that night, witness and Terrell started in pursuit of the thieves, going in the direction of Brazos Point, where they arrived at daybreak. From information obtained of J. E. Mickey, witness and Terrell crossed the river into

Johnson county, where they struck the trail of several horses. They followed this trail about ten miles, when they learned where the parties with the horses had camped. They followed the trail for several miles along the Cleburne road, across the country to the Weatherford road, thence to the left, through Kinnard's pasture north, finally losing the trail. They then climbed a hill for the purpose of observation and discovered several horses, some of them tied, near a ravine. They saw and recognized Dr. Cowen's horse at once. Witness and Terrell concluded that the parties with the horses had the advantage of position, and that it was useless to attempt their arrest without aid. Terrell went back for reinforcements and witness remained to watch the parties. One of the two men started from the camp to the brush with a pistol in his hand, and was shot dead. The defendant then, armed with a pistol, crawled out of the brush towards the dead man, and was surrounded and captured by the witness and by Terrell, who had returned in the mean time with other parties. The defendant refused to give his name until informed that the witness was a deputy sheriff of Bosque county. He then said that he was from Hamilton county, and said something about being merely an employé of the dead man, whom he was helping to take the horses to Fort Worth.

The arrest was made on Friday evening. The party started with the defendant and seven horses on next day, Saturday, and arrived at Meridian on Sunday. Meeting Dr. Cowen on the road, they delivered him his horse. They delivered Anderson his horses in Meridian. Two other horses were claimed and recovered by Messrs. Harris and Parks of Coryell county, and another by Mr. Powell of Hamilton county. When the defendant was arrested some one of the party asked him why he did not run. He replied: "By G—d, I never desert a partner." Witness heard the defendant say that he told Young (the man killed, evidently), when they were crossing the Brazos river, that he, defendant, was suspicious of him, Young, and that Young wanted to leave him. He did not hear defendant say that Young drew a pistol and made him go on. Before defendant's arrest and while Terrell was gone for help, witness heard some one, he did not know who, say: "Don't leave camp without your pistol." The testimony of the three preceding witnesses is that referred to in the third head-note of this report.

A. E. Anderson testified that he drove his horses to Norway Mills on the 19th day of March, 1884, and returned them to his lot about 9 o'clock that night, and fed them. He recovered his horses through Canuteson on the Sunday following.

The first head-note of this report alludes to the evidence expected to be produced from absent witnesses, as set out in the defendant's application for a continuance. That application, after stating such diligence as was used to procure the witnesses, asserts that by these witnesses, J. J. Walker and Lizzie A. Walker, he expected to prove that, at the time of the theft of the horses, March 5, 1884, he, the defendant, camped with the witnesses in Bosque county, about four miles above Clifton, and next morning accompanied the said witnesses nearly to Meridian, passing East Meridian and going towards Morgan, when the man Young, in whose possession the horses were found, overtook them, and asked the defendant to assist him in taking the said horses to Fort Worth, which horses, he, Young, said he had just purchased; and that the defendant left the said witnesses to aid the said Young in driving the said horses, believing in good faith that the said Young had actually purchased the said horses, and having no knowledge whatever that the said horses were stolen.

The motion for new trial raised the questions discussed in the opinion.

*W. S. Billups*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge. Appellant, in the trial court, applied for a continuance because of the absence of witnesses whose testimony he alleged to be material to his defense. His application was overruled, and after trial and conviction he moved for a new trial, one of the grounds of his motion being that the court erred in refusing his application for continuance. The action of the court upon the application for continuance and the motion for new trial are assigned as error, and counsel for appellant presents as his first proposition, under this assignment, that the statute giving discretionary power to the trial judge to grant or refuse a continuance, and also discretionary power to grant or refuse a new trial, is unconstitutional and void. The argument advanced by counsel in support of this proposition is that such power deprives the citizen of the right to have compulsory process for his witnesses, and of the right of trial by jury.

We have been much interested by the able brief and argument of counsel for appellant upon this question, and have maturely considered the same. Without entering upon an elaborate discussion of the subject, we will briefly state the conclusions at which we have arrived. 1. The statute claimed to be unconstitutional (Code Crim.

Proc., art. 560, subdivision 6) does not deprive the accused of the right to have compulsory process for his witnesses (Bill of Rights, sec. 10), nor does it impair such right.    2. It does not deprive the accused of the right of trial by jury.   (Bill of Rights, sec. 15.)    3. The Legislature has full power to regulate continuances and new trials.    There is no provision in the Constitution which denies or limits such powers.

In the case at bar, the accused had compulsory process for his witnesses, and had a trial by jury.   He was not deprived of either of those constitutional rights.    We are of the opinion that the court did not err in refusing his application for a continuance, nor in refusing to grant him a new trial.    Conceding that the absent testimony was material, we think the trial judge was well warranted in holding that it was not probably true.    When considered with reference to the evidence adduced on the trial, it could not be reasonably contended that the facts stated in the application for continuance were probably true.    There has been no abuse of the discretionary power of the trial judge in this matter, as far as we can perceive from the record before us.

It is contended by appellant's counsel that article 800 of the Code of Criminal Procedure is unconstitutional; that it conflicts with section 13 of the Bill of Rights, which forbids excessive fines and cruel or unusual punishments.    We are unable to see the force of this position.    Confinement in the penitentiary for the crime of horse theft cannot be regarded as either excessive, cruel or unusual. This offense has always been thus punished in this State, and in some countries it is even punished capitally.    In providing for successive imprisonments upon different convictions, this provision of the Code is in harmony with the common law.    Mr. Wharton says: " When a term of imprisonment is still unexpired, the prisoner being in custody, the proper course is to appoint the second imprisonment to begin at the expiration of the first; and a sentence to this effect is sufficiently exact.    The same order is taken when there are simultaneous convictions, the sentence prescribing that the term on the second offense is to begin on the expiration of the term assigned the first offense."    (Whart. Cr. Pl. & Pr., § 932.)    It is not necessary, as in the case of a cumulative punishment, to allege in the indictment for the second offense the conviction in the first.    In this case the defendant, at the same term of the court, had been convicted and sentenced for a separate and distinct theft from the one charged here, and it was proper to order that the imprisonment in this case should commence at the expiration of the term for which the defendant had been sentenced in the prior case.

*Exceptions* were saved to the admission of certain testimony offered by the State and admitted over the objections of the defendant. This testimony was admissible, in our opinion, for the purpose of identifying the defendant as one of the parties who committed the theft, and of showing that he knew and concurred in the fraudulent intent of his companion in taking the horses. It was not evidence to prove the *taking* of the particular horse charged in this indictment to have been stolen, and it would have been proper for the court to have instructed the jury as to the limits to which their consideration of it should be confined. But no exceptions were made to the charge because of this omission, and no additional charge upon this point was requested, and it is apparent to us from the other evidence in the case, that the defendant's rights have not probably been prejudiced by this oversight of the learned judge.

No exceptions were made to the charge of the court. Some special charges were requested, which were refused. No exception was reserved to this action of the court. We have carefully considered the charge in connection with the evidence in the case, and cannot perceive wherein it is defective in any material respect. It is, in our opinion, a fair and correct statement of the law of the case.

We find no error in the record for which the judgment should be reversed, and it is therefore affirmed.

*Affirmed.*

[Opinion delivered November 12, 1884.]